IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DAVID C. YATES, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 7:14-cv-82 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff David C. Yates, Jr. ("Yates") challenges the decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f. Specifically, Yates alleges that the ALJ failed to fully develop the record, failed to properly assess his credibility, failed to properly determine his residual functional capacity, and failed to properly determine his ability to perform work. I find that the ALJ's decision is supported by substantial evidence in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16) and **DENYING** Yates' Motion for Summary Judgment. Dkt. No. 19.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Yates failed to demonstrate that he was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant

---
[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted

1

evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Yates filed for SSI and DIB on March 10, 2011, claiming that his disability began on October 17, 2007.[2] R. 214–20. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 63–110. On January 17, 2013, ALJ Joseph Scruton held a hearing to consider Yates' disability claim. R. 33–62. Yates was represented by an attorney at the hearing, which included testimony from vocational expert Barbara Byers. Id.

On February 12, 2013, the ALJ entered his decision analyzing Yates' claim under the familiar five-step process,[3] and denying Yates' claim for benefits. R. 20–28. The ALJ found that Yates suffered from the severe impairments of history of thoracic spine fusion surgery,

---

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Yates' date last insured was December 31, 2012. R. 22. Thus, he must show that his disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

degenerative disc disease of the lumbar and cervical spine with facet arthrosis, mild arthritis of the ankles, and mild coronary artery disease. R. 22. The ALJ found that these impairments did not meet or medically equal a listed impairment. R. 23. The ALJ further found that Yates had the residual functional capacity ("RFC") to perform light unskilled work with occasional crouching, stooping, and kneeling; occasional reaching in all directions; occasional handling and fingering; and no climbing. R. 23. The ALJ determined that Yates could not return to his past relevant work, but that he could work at jobs that exist in significant numbers in the national economy, such as rental clerk, school bus monitor and delivery driver. R. 28. Thus, the ALJ concluded that he was not disabled. Yates requested that the Appeals Council review the ALJ's decision, and on January 6, 2014, the Appeals Council denied Yates' request for review (R. 1–4). This appeal followed.

## ANALYSIS

Yates was born in 1963, and attended school through the ninth grade. R. 40, 233. Yates broke his back in a car accident in 2003, and underwent a thoracic spine fusion. R. 37, 322. Yates last worked as a sheet metal mechanic through 2007, and continued to complain of neck and upper back pain throughout the relevant disability period. R. 237. Yates' arguments on appeal relate to the ALJ's consideration of his physicians' records, his credibility and his ability to adjust to other work in the economy.

### Duty to Develop the Record

Yates argues that the ALJ erred by failing obtain a medical source statement from his treating physician, Justin Neill, M.D., in order to fully develop the record. Dr. Neill treated Yates for back pain from June 2012 through September 2012. R. 382–83, 406–08, 410, 422–24, 430, 434–39. The record contains Dr. Neill's treatment notes, but does not include an opinion

3

from Dr. Neill with regard to Yates' functional capacity or limitations. Yates asserts that the record is inadequate to determine his disability without a medical source statement from Dr. Neill. Pl. Br. Summ. J. p. 8.

Yates correctly asserts that the ALJ has a duty to develop the record. See Cook v. Heckler, 783 F.2d 1168, 1173–74 (4th Cir. 1986) ("[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate.")(citations omitted). This duty is discharged, however, so long as "the record is adequate to make a determination regarding a disability claim." Kersey v. Astrue, 614 F. Supp. 2d 679, 693 (W.D. Va. 2009) (citing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)); France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000); cf. Parker v. Astrue, 792 F.Supp.2d 886, 895 (E.D.N.C. 2011).

Further, this duty does not transform the ALJ into claimant's counsel, and the ALJ "has the right to assume that counsel is presenting the claimant's strongest case for benefits." Blankenship v. Astrue, No. 3:11-cv-5, 2012 WL 259952, at *13 (S.D.W. Va. Jan. 27, 2012) (citations omitted). "The regulations require only that the medical evidence be 'complete' enough to make a determination regarding the nature and severity of the claimed disability, the duration of the disability and the claimant's residual functional capacity." Kersey v. Astrue, 614 F. Supp. 2d at 693–94 (citing 20 C.F.R. §§ 404.1513(e) and 416.913(e)). Therefore, the inquiry in determining "whether the record is adequate to support a judicious administrative decision" centers on whether there are "evidentiary gaps" that prejudice the rights of the claimant. Blankenship, 2012 WL 259952, at *13 (citing Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980)).

4

Here, the record was sufficient for the ALJ to make a determination regarding Yates' impairments. The record includes treatment notes from Yates' providers during the relevant period, including Drs. Neill, Simonds, McNeal and Nurse Practitioner Douglas. The record also includes opinions as to Yates' functional capacity by two state agency physicians and consultative examiner William Humphries, M.D. R. 67–69, 91–94, 322–25. The ALJ considered all of the information in the record when developing Yates' RFC, including the results of multiple objective tests and physical examinations relating to Yates' back pain, as well as Yates' testimony about his limitations. R. 23–25.

There is no suggestion by the ALJ or the physicians who rendered opinions in this case that the record is incomplete or in any way inadequate to determine Yates' functional capacity. Yates does not provide any specific reason that an opinion from Dr. Neill with regard to his functional capacity is required to complete the record, aside from noting that Dr. Neill had knowledge of his treatment record and his opinion would be entitled to great weight. Pl. Br. Summ. J. p. 8–9. Yates "has not identified material evidence that was missing at the hearing and has not presented new material evidence that should be considered." Clark v. Astrue, No. 1:10-cv-51, 2011 WL 3611326, at *3 (W.D. Va. Aug. 17, 2011).

Further, Yates was represented by counsel at the hearing and there was no suggestion made at the hearing concerning a need to withhold a disability determination pending further development of the record. R. 33–62. An attorney may not later attack the ALJ for failing to investigate further when the attorney approved of the record. Baldwin, 2014 WL 3939213, at *2 (citing Hardy v. Astrue, No. 11–299, 2013 WL 66082, at *7 (W.D.N.C. Jan. 4, 2013)). There has also been no identification of any specific evidence concerning Yates' medical condition which would suggest a different disability determination by the ALJ. These failures are fatal to

5

Yates' argument that the ALJ violated his duty to develop the record. See Root v. Colvin, 5:12CV00103, 2013 WL 6633081, at *7 (W.D. Va. Dec. 17, 2013); Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000) (claimant has burden to show that additional evidence would have been produced that might have led to a different decision) (cited with approval in Camp v. Massanari, 22 Fed. Appx. 311 (4th Cir. 2001)). Accordingly, the ALJ was not required by the regulations to obtain an opinion from Dr. Neill or further develop the record in this case.

### Treating Physicians' Opinions

Despite Yates' assertion that the record is incomplete because it does not contain an opinion from Dr. Neill, he also argues that the ALJ erred by failing to give Dr. Neill's "opinions" in the record greater weight. In support of this argument, Yates restates Dr. Neill's treatment records and asserts that Dr. Neill's "testimony" is well supported. Pl. Br. Summ. J. p. 11. Yates also asserts that the ALJ erred by failing to state the weight given to the records from his other treating physicians such as Drs. McNeal and Simonds. Yates acknowledges that the ALJ reviewed the records from these doctors, but argues that the ALJ was required to give their evidence specific weight, relying upon 20 C.F.R. § 404.1527(b), which states that the Commissioner will always consider the medical opinions in the case record together with the rest of the relevant evidence.

Yates' argument misconstrues the ALJ's duties under the regulations. The regulations require the ALJ to weigh *medical opinions* and state the weight given to each *opinion* in the decision. See 20 C.F.R. §§ 404.1527(c), 416.927(c), SSR 96-2p (S.S.A. July 2, 1996). Social Security Ruling 96-2p defines the term "medical opinion" in this context as follows:

> Under 20 CFR 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. (See SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner.")

6

SSR 96-2p (S.S.A. July 2, 1996). The term is further clarified by SSR 96-5p,

> The regulations at 20 CFR 404.1527(a) and 416.927(a) define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."

SSR 96-5p (S.S.A. July 2, 1996).

The record contains treatment notes from Drs. Neill, McNeal and Simonds, but it does not contain any opinions from those physicians relating to Yates' functional capacity or limitations. Specifically, Dr. Neill treated Yates for back pain from June 2012 through September 2012. R. 382–83, 406–08, 410, 422–24, 430, 434–39. Dr. Neill's treatment notes contained in the record include Yates' subjective complaints, physical exams, diagnoses of chronic back pain and instructions. R. 422–27, 434–39. The most specific portions of Dr. Neill's physical exams note "no joint pain or swelling, full range of motion, back nontender" (R. 435) (6/14/12), and "full range of motion in shoulder but slow in nature." (R. 423) (7/27/12). The record does not include an opinion from Dr. Neill with regard to Yates' functional capacity or limitations.

Drs. Simonds and McNeal performed neurosurgery consultations of Yates on August 16, 2012 and September 18, 2012. R. 379, 413–415. On physical exam, Yates could move all major muscle groups with maximum effort, had 5/5 motor strength, but was limited to some degree by neck pain upon any motion of the upper extremity. He had pain and numbness down the arms with cervical flexion, his gait was mildly antalgic and he had a mildly positive Romberg's test. Id. Their "Assessment and Plan" states,

> This nice gentleman has some symptoms of some gait disturbance and some dexterity in the upper extremities. He has a previous fusion several years prior for a high thoracic fracture. Nothing is overwhelming on MRI of the cervical thoracic spine, but I wonder if there is not progressive kyphoisis at the level of the fracture. We will send him for scoliosis films as well as a CT this level of the

7

> fusion to fully evaluate. Should this not show anything significantly I wonder
> should he not be more suited for PM&R to see if they can detect nonsurgical
> causes of his progressive pain.

R. 379.

Drs. Simonds and McNeal's consultative notes do not constitute "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [Yates'] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." SSR 96-5p. The ALJ was certainly required to consider the treatment records of these physicians in his analysis, but he was not required to assign these records specific weight in his decision. There simply are no "opinions" from Drs. Neill, McNeal or Simonds for the ALJ to give a specific weight. Accordingly, I find that the ALJ properly considered the treatment notes of Yates' physicians contained in the record and did not err by failing to assign them specific weight.

### **Credibility**

Yates also claims that the ALJ erred by determining that his credibility was weakened by inconsistencies in the record. R. 12. The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Yates' subjective allegations of disabling pain are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Yates met his burden of proving that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Yates' ability to work. Id. at 594–95. Here, the ALJ

8

identified the evidence forming the basis of his credibility determination, and explained his reasons for finding Yates' statements about his symptoms not fully credible.

The ALJ determined that Yates' medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in his decision. R. 25. Specifically, the ALJ noted that Yates' treatment for his impairments has been essentially routine and/or conservative in nature; the medical evidence does not support Yates' allegations of arm and hand numbness; his asserted symptoms and pain exceed those supported by the treatment records; Yates' testimony that he had difficulty when switched to light duty at work is not substantiated by the record; and his allegations of balance problems are not supported in the record. R. 25.

Yates claims that the ALJ erred by not providing an analysis or explanation concerning his treatment other than medication, or the effectiveness and side effects of his medication. Pl. Br. Summ. J. p. 13. Yates relies upon his testimony at the administrative hearing to support his claim that his medications were not working well and he suffered from serious side effects, such as nausea and dizziness. Pl. Br. Summ. J. p. 14. It is the province of the ALJ to consider Yates' subjective testimony, together with the evidence in the record and determine his credibility. The record does not reflect that Yates suffered from serious side effects from his medications, aside from prescriptions for nausea medication on two occasions. R. 417, 435. There is no other objective support in the record for Yates' claim that his medication caused serious side effects.

Yates also asserts that the ALJ failed to consider Dr. Simonds' medical "opinion" noting the possibility of progressive kyphosis, and failed to consider how the overall record validates his complaints of persistent pain. Pl. Br. Summ. J. p. 14. This allegation is simply incorrect. The

9

ALJ considered the neurosurgery consultations by Drs. McNeal and Simonds, and stated their findings upon physical exam, X-rays and MRI in detail in his decision. R. 24. The ALJ did not specifically include Dr. Simonds' note about the "possibility of progressive kyphosis" in the decision, but clearly reviewed Dr. Simonds' records and findings. The ALJ also reviewed the overall record, including Yates' course of treatment, his subjective statements regarding his pain and limitations, and the medical opinions by examining and reviewing physicians. R. 23–26.

Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92–1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). It is part of the ALJ's prerogative as a fact finder to consider the evidence as a whole in determining a claimant's credibility. Where, as here, the ALJ's credibility determination is supported by substantial evidence, it should not be disturbed. See Johnson v. Barnhart, 434 F.3d 650, 658–59 (4th Cir. 2005) (per curiam) (citing Craig, 76 F.3d at 589).

**Step 5 Analysis**

Yates argues that the ALJ erred by "mechanically" applying his age when determining his ability to adjust to other work in violation of 20 C.F.R. § 404.1563(b). The Commissioner bears the burden at step five to show the existence of a significant number of jobs in the national economy that the claimant can perform given his or her RFC. To aid in making this determination, the Commissioner promulgated the Medical–Vocational Guidelines ("the Grids") located at 20 C.F.R. Part 404, Subpart P, Appendix 2. Washington v. Astrue, 698 F. Supp. 2d

10

562, 571 (D.S.C. 2010). The Grids are tables that "indicate the proper disability determinations for various combinations of age, education, and previous work experience in conjunction with the individual's residual functional capacity ..." Hall v. Harris, 685 F.2d 260, 265 (4th Cir. 1981). The Grids break age into four categories: (1) close to retirement age (60–64); (2) advanced age (55–59); (3) approaching advanced age (50–54); and (4) younger individual (18–49). 20 C.F.R. Part 404, Subpart P, Appx. 2 § 201.00.

The Grids are "not conclusive, but may only serve as guidelines" when "a claimant suffers from both exertional and nonexertional limitations." Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); 20 C.F.R. § 404.1569a(d). If a nonexertional limitation is grave enough to erode a claimant's ability to perform the full range of work of which she is exertionally capable, the Grids cannot be used, and the Commissioner must use a vocational expert to prove sufficient jobs exist when the Grid does not apply to a claimant. Id. at 49–50.

Here, the ALJ determined Yates' vocational profile as follows: (1) he can perform no more than a light level of physical exertion; (2) he is a younger individual; (3) he has at least a high school education and is able to communicate in English; and (4) transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Yates is "not disabled," whether or not he has transferable job skills. R. 27. Applying the Grids using this profile, the ALJ found that Rule 202.21 would direct a finding of not disabled if Yates could perform the full range of light work. The ALJ also determined, however, that Yates' ability to perform all or substantially all of the requirements of light work is impeded by additional limitations, and thus the ALJ relied upon the testimony of a vocational expert to conclude that Yates is capable of performing work that exists in significant numbers in the national economy. R. 27–28.

11

Yates asserts that the ALJ committed reversible error by considering him to be a "younger individual," and failing to recognize that he was a few months shy of his 50th birthday, at which point he would qualify as a "person approaching advanced age" under the Grids. In a such a "borderline age situation," the regulations provide that an ALJ cannot apply the age categories "mechanically," but must instead "consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." 20 C.F.R. § 404.1563(b); Gory v. Schweiker, 712 F.2d 929, 930–931 (4th Cir. 1983) (citing 20 C.F.R. § 404.1563(a)). Where a borderline age situation exists, the ALJ must decide whether it is more appropriate to use the higher age category or the claimant's chronological age. Pickett v. Astrue, 895 F. Supp. 2d 720, 723-24 (E.D. Va. 2012); Brown v. Astrue, 2009 WL 890116, No. 3:07–2914–SB, at *12 (D.S.C. Mar. 30, 2009) (citing HALLEX II–5–3–2 (S.S.A.), 2003 WL 25498826).

To determine whether a borderline age situation exists, the Social Security Administration adopted the following two-part test: (1) determine whether the claimant's age is within a few days to a few months of a higher age category; (2) if so, determine whether using the higher age category would result in a decision of "disabled" instead of "not disabled." If the answer to one or both is "no," a borderline age situation either does not exist or would not affect the outcome. The adjudicator will then use the claimant's chronological age. If the answer to both is "yes," a borderline age situation exists and the adjudicator must decide whether it is more appropriate to use the higher age or the claimant's chronological age. See HALLEX II–5–3–2.

In this case, a borderline age situation does not exist because although Yates was within two months of a higher age category, using the higher age category would not result in a different decision under the Grids. Applying the same factors considered by the ALJ for a

12

person age 50–54 or "closely approaching advanced age"—light exertion; high school graduate or more; skilled or semi-skilled not transferrable—still directs a finding of not disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.14. Additionally, when presenting hypothetical questions to the vocational expert, the ALJ included a hypothetical individual who is "44 to roughly 50 years of age." R. 55. Thus, the vocational expert considered the relevant factors, including an individual closely approaching advanced age, and testified that work exists in the national economy that the individual can perform. Accordingly, I find no error in the ALJ's step 5 analysis and recommend that the ALJ's decision be affirmed.[4]

## RECOMMENDED DISPOSITION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Glen E. Conrad, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings, as well

---

[4] Yates also asserts that the ALJ erred by giving the vocational expert an incomplete hypothetical. Pl. Br. Summ. J. p. 16. This argument is based entirely upon Yates' assertion, set forth above, that the RFC developed by the ALJ is not supported by substantial evidence. Because I find that the ALJ's RFC determination is supported by substantial evidence, and the hypothetical given to the vocational expert fully encompasses the RFC, I find no merit in Yates' argument that the hypothetical given to the vocational expert was incomplete.

13

as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

                                    Enter: August 12, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

14

Case 7:14-cv-00082-GEC-RSB   Document 20   Filed 08/12/15   Page 14 of 14   Pageid#: 544